ORIGINAL

Approved: _____
JUN XIANG
Assistant United States Attorney

Before: THE HONORABLE JENNIFER E. WILLIS
United States Magistrate Judge
Southern District of New York

**23 MAG 5407**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KYEONE STONE, and<br>TRAVIS MOORE,<br><br>*Defendants.* | **SEALED COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 922(g)(1),<br>924(c), 924(j), 1951, and 2<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

   STEFANO BRACCINI, being duly sworn, deposes and says that he is a Special Agent with the United States Attorney's Office, and charges as follows:

### COUNT ONE
### (Hobbs Act Robbery)

   1. On or about May 15, 2020, in the Southern District of New York and elsewhere, KYEONE STONE and TRAVIS MOORE, the defendants, knowingly committed robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and aided and abetted the same, to wit, STONE robbed another individual of marijuana at gunpoint in the Bronx, New York, and MOORE assisted STONE with fleeing the scene of the robbery.

   (Title 18, United States Code, Sections 1951 and 2.)

### COUNT TWO
### (Murder Through the Use of a Firearm)

   2. On or about May 15, 2020, in the Southern District of New York and elsewhere, KYEONE STONE, the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the Hobbs Act robbery charged in Count One of this Complaint, knowingly used carried a firearm, and in furtherance of such crime, possessed a firearm, and aided and abetted the use, carrying, and possession of a firearm, and in the course of that crime caused the death of a person through the use of a firearm,

1

which killing is murder as defined in Title 18, United States Code, Section 1111(a), and aided and abetted the same, to wit, in the course of the Hobbs Act robbery charged in Count One of this Complaint, STONE used a gun to shoot and kill the individual whom STONE had robbed of marijuana in the Bronx, New York.

(Title 18, United States Code, Sections 924(j) and 2.)

### COUNT THREE
### (Firearms Use, Carrying, and Possessing)

3. On or about May 15, 2020, in the Southern District of New York, TRAVIS MOORE, the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the Hobbs Act robbery charged in Count One of this Complaint, knowingly used and carried a firearm, and, in furtherance of such crime, possessed a firearm, and aided and abetted the use, carrying, and possession of a firearm.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

### COUNT FOUR
### (Felon in Possession of a Firearm)

4. On or about May 15, 2020, in the Southern District of New York and elsewhere, KYEONE STONE, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, to wit, a .380 caliber Ruger pistol, and the firearm was in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1).)

### COUNT FIVE
### (Felon in Possession of a Firearm)

5. On or about May 15, 2020, in the Southern District of New York and elsewhere, TRAVIS MOORE, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, to wit, a 10mm caliber Smith & Wesson pistol, and the firearm was in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

6. I am a Special Agent with the United States Attorney's Office for the Southern District of New York. I have been personally involved in the investigation of this matter. This affidavit is based upon my investigation, my conversations with law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts

that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

7. Based on my review of law enforcement records and hospital records, I have learned, among other things, the following:

   a. On or about May 15, 2020, shortly before 2:30 a.m., a female caller (the "Wife") called 911 to report that her husband (the "Victim") had been shot inside their apartment (the "Apartment") in the Bronx, New York. Police officers with the New York City Police Department ("NYPD") responded to the scene and found the Victim with a gunshot wound to the chest.

   b. The defendant was transported to a nearby hospital and was pronounced dead a few hours later. Based on my review of the Final Certificate of Death issued by the Office of the Chief Medical Examiner ("OCME") on or about May 16, 2020, I have learned that a medical examiner determined that the Victim died by a gunshot wound to the torso.

   c. Inside the kitchen of the Apartment, police officers found "Haymaker"-branded marijuana on the counter, on the floor, and inside a drawer. A photograph of the marijuana found inside the Apartment appears below.



8. Based on my participation in interviews with the Wife, and my review of a report of a prior interview of the Wife, I have learned, among other things, the following:

   a. On or about May 14, 2020 and into the early morning of May 15, 2020, the Victim communicated with someone named "Stoney" by text messages and phone calls in regard to marijuana that the Victim hoped to sell to "Stoney." During those communications, the Victim invited "Stoney" to inspect the marijuana.

    b. In the early morning hours of May 15, 2020, the Wife, who was dozing off in the living room of the Apartment, awoke to the sound of the Victim and an individual the Wife understood to be "Stoney," whom the Wife had never met before, entering the Apartment. "Stoney" was wearing a blue surgical mask. The Victim and "Stoney," who were visible to the Wife based on where she was lying down, engaged in some conversation regarding marijuana in the kitchen.

    c. The Wife heard the sound of plastic rustling and saw "Stoney" make movements consistent with loading objects into a plastic bag. "Stoney" and the Victim exchanged additional words, at which point "Stoney" raised an object and the Wife heard a loud bang. "Stoney" then fled the apartment. The Wife saw that the Victim had been shot in the chest, and she called 911.

    d. At the time of the shooting, the Victim's and Wife's two young children were sleeping inside the Apartment.

    9. Based on my review of surveillance camera footage from the building where the Apartment is located (the "Building"), on or about May 15, 2020, I have learned, among other things, the following:

    a. On or about May 15, 2020, shortly before the Victim was shot and killed, video surveillance shows that the Victim and an individual who was later identified to be KYEONE STONE, the defendant, entered the Building and rode the elevator together to the tenth floor, where the Apartment was located. STONE was wearing a black zip-up sweatshirt with white striped sleeves and the words "Billionaire Boys Club" emblazoned on the back. STONE was also wearing a blue surgical mask, which he lowered at times. Still images appear below, with STONE circled in red and the Victim circled in green.

 

b. Further video surveillance from the tenth floor shows that the Victim and STONE walked towards the Apartment. A still image appears below, with STONE circled in red and the Victim circled in green.



c. Further video surveillance shows that, shortly after having entered the Apartment with the Victim, STONE exited the Apartment alone and ran down the hallway toward the elevators. STONE pressed the elevator button and then, without waiting for the elevator to arrive, ran to a stairway entrance and entered the stairwell. STONE's left hand was holding a black plastic bag, and STONE's right hand was holding an object which STONE manipulated inside his pocket. Still images appear below.

 

    d. Further video surveillance shows that STONE descended the staircase between the tenth and ninth floors while still holding the black plastic bag with his left hand and manipulating an object in his pocket with his right hand. Finally, video surveillance shows that STONE exited the Building while speaking into his cellphone. Still images appear below.



    10. Based on my participation in interviews with police officers who participated in the investigation, as well as my review of body-worn camera footage from those officers, I have learned, among other things, the following:

    a. On or about May 15, 2020, at approximately 2:30 a.m., four officers with the New York City Police Department were riding together in a police vehicle when they received a report of a shooting in the vicinity of 183rd Avenue and Third Avenue in the Bronx, New York. The officers drove down Third Avenue.

    b. The officer who was driving the vehicle ("Officer-1") observed an individual, who was later identified to be KYEONE STONE, the defendant, ducking in the street between cars. A second officer ("Officer-2"), who was Officer-1's partner, made the same observation. The officers made a U-turn, and observed STONE entering a livery cab.

6

    c. The officers pulled over the livery cab and began approaching the cab. Officer-2 and a third officer ("Officer-3") approached the passenger side of the cab, where the man whom Officer-1 and Officer-2 had observed entering the cab, STONE, was seated.

    d. Officer-1 and a fourth officer ("Officer-4") approached the rear driver's side seat, where a second man, who was later identified to be TRAVIS MOORE, the defendant, was seated. STONE and MOORE were shifting and moving around in the rear passenger compartment of the cab as the officers approached.

    e. Looking through the rear passenger window of the livery cab, Officer-1 saw a firearm on the rear seat next to where MOORE was seated. Officer-1 reached into the cab and secured the firearm, which was a loaded 10mm Smith & Weston pistol (the "S&W Pistol"). Other officers removed MOORE from the rear passenger door and placed MOORE under arrest. A photograph of the S&W Pistol appears below.



    f. At the same time, Officer-2 and Officer-4 removed STONE from the rear driver's side door and placed STONE under arrest. STONE was still wearing the same "Billionaire Boys Club" sweatshirt he was recorded wearing inside the Building, as described above. A photograph of the sweatshirt that STONE was arrested wearing appears below.

7



  g. After STONE and MOORE were placed under arrest, police officers saw that, laying on the backseat, where STONE had been seated before being removed by police officers, was a second firearm. This second firearm—a loaded .380 caliber Ruger pistol (the "Ruger Pistol")—was subsequently secured by another police officer. A photograph of the Ruger Pistol appears below.



  h. On the backseat, next to where the Ruger Pistol was found, police officers found a black plastic bag (the "Plastic Bag")—which was consistent in appearance with the black plastic bag that STONE was captured holding in his hand as he exited the Victim's

8

Apartment. Inside the Plastic Bag were multiple packets of "Haymaker"-branded marijuana, similar in appearance to the "Haymaker"-branded marijuana found inside the Victim's Apartment. A photograph of the Plastic Bag and the marijuana packets found inside appears below. Also below is a photograph showing where the Plastic Bag, the Ruger Pistol, and a cellphone were recovered inside the cab.





   i.  Following STONE's arrest, police officers presented STONE, who was in custody and handcuffed, to the Wife for confirmatory identification. The Wife identified STONE as "Stoney," the man who entered the Apartment and shot the Victim.

   11.  Based on my participation in interviews with the driver (the "Driver") of the livery cab that KYEONE STONE and TRAVIS MOORE, the defendants, were riding at the time of their arrest, and my review of a report of a prior interview of the Driver, I have learned, among other things, the following:

   a.  The Driver picked up the two passengers, STONE and MOORE, understanding that they had requested a one-way ride.[1] During the ride, STONE provided the intersection to which the Driver was to drive in the Bronx, New York.

---

[1] In his interviews with law enforcement, the Driver did not use STONE's and MOORE's names because the Driver did not know the defendants prior to driving them. I understood the references to the defendants because, as discussed herein, the Driver identified one of the two men (STONE) as the passenger who exited and later reentered the cab, whereas the second man (MOORE) stayed inside the cab throughout.

    b. At the destination in the Bronx, near St. Barnabas Hospital, STONE exited the cab, paid for part of the fare and instructed the Driver to wait for STONE to return from making a visit for a return trip. Before departing, STONE spoke with MOORE. MOORE remained in the cab with Driver and appeared nervous. STONE crossed the street.

    c. After waiting in the car for a few minutes, the Driver instructed MOORE to leave the car. MOORE refused and told the Driver to stay and to wait for STONE. After a few more minutes, STONE returned to the cab and entered the rear passenger seat. STONE directed the Driver to drive onto the highway and run a red light. The Driver declined to run the light and pulled over when he saw a trailing police vehicle.

    12. Based on my review of law enforcement records, I have learned, among other things, the following:

    a. A deformed .380 caliber bullet (the "Fired Bullet") was found inside the Victim's body.

    b. A .380 caliber shell casing (the "Shell Casing") was found inside the kitchen of the Apartment following the shooting.

    c. On or about May 19, 2020, a Detective with the Firearms Analysis Section of the NYPD conducted a microscopic ballistics analysis of the Ruger Pistol, the Fired Bullet, and the Shell Casing, and concluded that the Fired Bullet and the Shell Casing had been fired from the Ruger Pistol.

    d. The NYPD collected swabs from the Ruger Pistol, two of which were determined by the OCME to contain DNA that was suitable for comparison. The OCME determined that those two samples each had two contributors and determined, as to one swab, that one of the two contributors was female. The OCME concluded that KYEONE STONE, the defendant, was not a contributor to the DNA recovered from either swab. The OCME determined that the analysis was inconclusive as to whether TRAVIS MOORE, the defendant, was a contributor to the DNA recovered from either swab.

    13. Based on my review of criminal history and court records for KYEONE STONE and TRAVIS MOORE, the defendants, I have learned, among other things, the following:

    a. On or about December 7, 2016, STONE was convicted in New York County Supreme Court of criminal possession of a weapon in the second degree in violation of New York Penal Law § 265.03(3), which is a felony, and he was subsequently sentenced principally to a term of imprisonment of 42 months.

    b. On or about August 20, 2015, MOORE was convicted in New York County Supreme Court of robbery in the second degree in violation of New York Penal

Law § 160.10(1), which is a felony, and he was subsequently sentenced principally to a term of imprisonment of 42 months.

14. Based on my training and experience, and my understanding of an opinion provided by a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives who is familiar with the manufacturing of firearms, I am aware that the possession of the Ruger Pistol and the S&W Pistol were in and affecting interstate commerce.

WHEREFORE, I respectfully request that warrants be issued for the arrests of KYEONE STONE and TRAVIS MOORE, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

STEFANO BRACCINI
Special Agent
United States Attorney's Office for the
Southern District of New York

Sworn to me before me this
5th day of July, 2023

THE HONORABLE JENNIFER E. WILLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK